## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SECURA INSURANCE COMPANY ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MORTON BUILDINGS, INC., ) <br> and RESIDENTIAL SERVICE ) <br> PROVIDERS, INC. d/b/a RSP HEATING ) <br> AND COOLING, ) <br> ) <br> Defendants. ) | Case No.: 3:26-cv-83 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, SECURA INSURANCE COMPANY ("Secura") by its attorneys, Tressler LLP, and for its Complaint for Declaratory Judgment against Defendants, MORTON BUILDINGS, INC. ("Morton Buildings"); and RESIDENTIAL SERVICE PROVIDERS, INC., d/b/a RSP HEATING AND COOLING ("RSP") states as follows:

### INTRODUCTION

1. This is a declaratory judgment action in which Secura seeks a declaration that it owes no duty to defend or indemnify RSP with respect to the lawsuit entitled: *Morton Buildings, Inc. v. Residential Service Providers, Inc. d/b/a RSP Heating and Cooling,*, case number 2025LA131 First Judicial Circuit for Williamson County, Illinois (the "Underlying Lawsuit").

2. An actual, substantial and judiciable controversy has arisen and now exists between Morton Buildings, RSP and Secura.

### PARTIES

3. Plaintiff Secura is a Wisconsin insurance company with its principal place of business in Appleton, Wisconsin.

1

4. Defendant Residential Service Providers Inc. is an Illinois corporation with its principal place of business located in Cartersville, Illinois.

5. Defendant Morton Buildings, Inc. is an Illinois corporation with its principal place of business in Morton, Illinois.

6. No specific relief is requested against Morton Buildings, Inc., as they are named solely as an interested party to be bound by the declaration of rights that Secura seeks herein.

## JURISDICTION AND VENUE

7. Complete diversity of citizenship exists between Secura, a citizen of Wisconsin, and Defendants, who are both citizens of Illinois. The amount in controversy exceeds $75,000 as it includes the cost to defend RSP in the Underlying Lawsuit and an alleged obligation to indemnify RSP for the significant damages alleged by Morton in remedying the alleged faulty construction work performed by RSP, for an amount in excess of $75,000.

8. Venue in this Court is proper under 28 U.S.C. §1391(b)(1) and (2) because the Secura insurance policy that is the subject of the action was issued and delivered in this district and a substantial part of the event giving rise to the claim occurred in this district.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 to hear this action and this Court is the proper venue in which to bring this action.

## FACTUAL BACKGROUND

### Underlying Lawsuit

10. On May 6, 2025, Morton filed a complaint against RSP in the Fourth Judicial Circuit for Clinton County, Illinois, initiating the Underlying Lawsuit. A true and correct copy of the complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit 1**.

11. The Underlying Lawsuit was transferred to the First Judicial Circuit Court for Williamson County on November 17, 2025.

12. The Underlying Lawsuit alleges that in the summer of 2018, Morton entered into a construction contract with CCS Real Estate for construction of the Pet Wellness & Urgent Care Center located at 4600 Cobblestone Lane, Marion, Illinois (the "Project"). *See* Exhibit 1, ¶ 1.

13. The Underlying Lawsuit alleges that Morton and RSP entered into a Subcontract Agreement on September 18, 2018 (the "Subcontract Agreement"), where RSP was to perform HVAC work at the Project. *See* Exhibit 1, ¶ 2.

14. The Underlying Lawsuit alleges that RSP was to "install eight (8) gas furnace and condensing units; seven (7) additional roof top units; two (2) energy recovery ventilators; thirteen (13) exhaust fans; grills; diffusers; a gas fired hydronic boiler; as well as all the ducting and exhaust systems as required by the Plans and Specifications." *See* Exhibit 1, ¶ 11.

15. The Underlying Lawsuit alleges that shortly after completion of the Project, concerns were raised regarding the HVAC system and alleged difficulty regulating temperature in parts of the building as well and problems with humidity. *See* Exhibit 1, ¶ 12.

16. The Underlying Lawsuit alleges that RSP returned to the Project throughout 2021 to address the alleged issues with the HVAC unit, but the efforts were unsuccessful. *See* Exhibit 1, ¶ 14.

17. The Underlying Lawsuit alleges that Morton conducted its own investigation into the temperature and humidity issues in the fall of 2021 but was unable to determine the source of the problems at the Project. *See* Exhibit 1, ¶ 15.

18. The Underlying Lawsuit further alleges that in August of 2022, Morton reinspected the Project after Morton became aware of water intrusion and moisture related issues in addition to the temperature and humidity issues. *See* Exhibit 1, ¶ 16-17.

19. The Underlying Lawsuit alleges that after the inspection, the area which RSP installed was removed and gaps at the joints and openings were exposed in the duct work. *See* Exhibit 1, ¶ 17.

20. The Underlying Lawsuit further alleges that subsequent inspections of the Project were performed by BPI Testing, LLC in October of 2022 which confirmed that RSP failed to comply with the plans and specifications of the Project in the following ways:

- installing large amounts of flex ductwork instead of hard duct material;
- failing to properly seal joints and duct connections resulting in joint leakage;
- wrapping ductwork with the incorrect insulation;
- failing to install dampers where required;
- installing fans without speed control.

*See* Exhibit 1, ¶ 18.

21. The Underlying Lawsuit additionally alleges that RSP's faulty workmanship caused "moisture to form within the ductwork of the HVAC systems and within insulated sprinkler lines resulting in humidity problems, water intrusion, moisture-related issues including mold and other property damage" to the Property and that Morton gave RSP opportunity to remedy the faulty workmanship which RSP failed to address after installing exhaust fans. *See* Exhibit 1, ¶ 19.

22. Finally, the Underlying Lawsuit alleges that Morton engaged Ponder Service Heating & Cooling in September 2024 for $192,795.00 to remedy RSP's faulty work and

performed various environmental inspections, remediation and reconstruction work in excess of $450,000.00. *See* Exhibit 1, ¶ 24.

23. The Underlying Lawsuit asserts the following causes of action against RSP: Count (I) Breach of Contract; Count (II) Indemnification; Count (III) Unjust Enrichment and Count (IV) Negligent Construction.

### The Policies

24. Secura issued a Commercial Protection Policy 20-CP-003385507-0 to its named insured, Residential Service Providers, Inc. for the policy period of April 6, 2023, to April 6, 2024 (the "Primary Policy"). A true and correct certified copy of the Primary Policy with premium information redacted is attached hereto as **Exhibit 2**.

25. The Primary Policy reads, in relevant part, as follows:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and …

    **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

> **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
>
>> (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>>
>> (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>>
>> (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

***

**SECTION V – DEFINITIONS**

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

***

*See* Exhibit 2.

26. The Primary Policy also provides Professional Errors and Omission Coverage, which reads as follows:

**I. Professional Errors and Omission Coverage**
**SECTION I – COVERAGE**
**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as "damages" arising out of a "wrongful act" to which this insurance applies. We will have the right and duty to defend the insured against any "claim" or "suit" seeking those "damages". However, we will have no duty to defend the insured against any "claim" or "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any incident and settle any "claim" or "suit" that may result. But:

(1) The amount we will pay for "damages" is limited as described in SECTION III – LIMITS OF INSURANCE; and

(2) OUR RIGHT AND DUTY TO DEFEND ENDS WHEN WE HAVE USED UP THE APPLICABLE LIMIT OF INSURANCE IN THE PAYMENT OF ONE OR MORE OF THE FOLLOWING:

(a) JUDGMENTS OR

(b) SETTLEMENTS; OR

(c) "DEFENSE EXPENSES" ONLY IF DEFENSE COSTS IS SHOWN IN THE SCHEDULE AS **Included within the Limits Of Insurance**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "damages" only if:

(1) The "damages" are caused by a "wrongful act" that takes place in the "coverage territory"; and

(2) The "wrongful act" occurs prior to the end of the policy period; and:

(a) After the Retroactive Date, if any, shown in the Schedule; or

(b) If no Retroactive Date is shown in the Schedule:

(i) After the effective date of the first consecutive Professional Errors And Omissions Coverage policy issued by us; or

(ii) Before the effective date of the first consecutive Professional Errors And Omissions Coverage policy issued by us when no other similar insurance coverage exists; and

(3) Prior to the inception date of this policy, the insured had no knowledge of:

7

    (a) The "wrongful act" or any resulting "claim" or "suit"; or

    (b) Any suspected "wrongful act" which would result, or could have reasonably been expected to result in a "claim" or "suit".

  (4) A "claim" for "damages" because of the "wrongful act" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under SECTION V – EXTENDED REPORTING PERIODS.

c. A "claim" by a person or organization seeking "damages" will be deemed to have been made at the earliest of the following times:

  (1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

  (2) When we make settlement in accordance with Paragraph a. above; or

  (3) When the insured informs us with written notice of any circumstance or incident occurring during the policy period which may subsequently give rise to a "claim" as required in SECTION IV – CONDITIONS, Paragraph 2. Duties In The Event Of Wrongful Act, Claim Or Suit, Paragraph a.

All "claims" arising out of a "wrongful act" causing loss to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured.

**SECTION VI – DEFINITIONS** is amended to add the following:

Additional Definitions

**3. "Wrongful acts":**

a. Means faulty workmanship, materials or design arising from:

(1) A negligent act, error or omission by you within means, methods, techniques, sequences and procedures employed by you in connection with your operations; or

(2) A defect in material or in a product manufactured, sold or installed by you, while acting in your capacity as a contractor, and resulting in "property damage" to "your work", "your product", or "impaired property".

b. Any or all "wrongful acts" arising from interrelated or a series of acts, errors or omissions shall be:

(1) Deemed to be one "wrongful act" taking place at the time of the earliest "wrongful act"; and

(2) Considered to have occurred only during the policy period or during any prior or subsequent policy period in which the earliest of the interrelated errors or omissions, or the earliest of a series of similar or related errors or omissions, occurred. All resulting "claims" shall be assigned to only one policy (whether issued by us or any other insurer); and if this policy applies; only one Wrongful Act Limit shall apply.

**1.** We will provide one or more Extended Reporting Periods, as described below, if:

8

    **a.** This Professional Errors And Omissions Coverage is canceled or not renewed; or

    **b.** We renew or replace this Professional Errors And Omissions Coverage with insurance that:

    **(1)** Has a Retroactive Date later than the date shown in the Schedule ; or

    **(2)** Does not apply to "wrongful act" on a claims-made basis.

***

*See* Exhibit 2.

27. Secura also issued a Commercial Umbrella Policy No. 20-CU-00338551-0 for the policy period of April 6, 2023, to April 6, 2024 (the "Umbrella Policy") to its insured, RSP. The Umbrella Policy's Schedule of Underlying Insurance identifies the Primary Policy as the underlying commercial general liability insurance. A true and correct certified copy of the Umbrella Policy with premium information redacted is attached hereto as **Exhibit 3**.

28. The Umbrella Policy states:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**     **Insuring Agreement**

    **a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

***

*See* Exhibit 3.

## COUNT I – DECLARATORY JUDGMENT

### Primary Policy

29.     Secura re-alleges and incorporates the allegations as set forth in paragraphs 1-28 as if set forth herein.

30.     The Primary Policy provides coverage for "property damage" caused by an "occurrence" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured. *See* Exhibit 2.

31.     The Underlying Lawsuit alleges that Morton and RSP entered into the subcontract agreement relating to the Project in 2018 and that the construction was completed in the fall of 2019. *See* Exhibit 1 ¶ 7.

32.     The Underlying Lawsuit further alleges that that RSP returned to the project throughout 2021 on numerous occasions after being informed of the alleged defective work. *See* Exhibit 1 ¶ 14-15.

33.     The Underlying Lawsuit also alleges that in August 2022, Morton reinspected the building at the request of the Owner, who reported water intrusion and other moisture-related issues in addition to continued difficulty regulating temperature and humidity issues and that Morton was required to perform repair and remediation in August and October of 2022. *See* Exhibit 1 ¶ 16-17.

34.     The alleged defective work took place in 2018 through 2019, and RSP was put on notice at latest in June of 2021.

35.     The Primary Policy has a policy period of April 6, 2023, to April 6, 2024. Thus, for the Primary Policy to be effective, property damage giving rise to the claim must have occurred between April 6, 2023, to April 6, 2024.

36. Any construction and remediation by RSP took place prior to the effective date of the Primary Policy. Moreover, RSP was aware of alleged defective workmanship prior to the effective date of the Primary Policy.

37. Any alleged "occurrence" took place prior to the effective date of the Primary Policy so Secura has no duty to defend or indemnify RSP for the matters alleged in the Underlying Lawsuit.

## COUNT II – DECLARATORY JUDGMENT

### Errors and Omissions Coverage

38. Secura re-alleges and incorporates the allegations as set forth in paragraphs 1-28 as if set forth herein.

39. The Primary Policy's Errors and Omissions Coverage provides that Secura will pay those sums that the insured becomes legally obligated to pay as "damages" arising out of a "wrongful act" to which this insurance applies. *See* Exhibit 2.

40. The Errors and Omissions Coverage only applies if the "wrongful act" occurs prior the end of the policy, after the retroactive date, and the insured had no knowledge of the "Wrongful act" or any resulting "claim" or "suit". *See* Exhibit 2.

41. The Errors and Omissions Coverage shows a retroactive date of April 6, 2023, and therefore, any "wrongful act" must have occurred after April 6, 2023. *See* Exhibit 2.

42. Any alleged defective construction and remediation by RSP took place prior to April 6, 2023.

43. RSP became aware of the defective construction in June of 2022 at the latest.

44.     Any alleged "wrongful act" by RSP took place prior to the Retroactive date of the Errors and Omissions coverage so Secura has no duty to defend or indemnify RSP for the matters alleged in the Underlying Lawsuit.

## COUNT III – DECLARATORY JUDGMENT

### Umbrella Policy

45.     Secura re-alleges and incorporates the allegations as set forth in paragraphs 1-28 as if set forth herein.

46.     The Umbrella Policy provides that Secura will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "property damage" to which the Umbrella Policy applies. *See* Exhibit 3.

47.     The Umbrella Policy identifies the Primary Policy as the commercial general liability underlying insurance. *See* Exhibit 3.

48.     The Umbrella Policy has the same policy period as the Primary Policy and was effective from April 6, 2023, to April 6, 2024. *See* Exhibit 3.

49.     Any construction and remediation by RSP took place prior to the effective date of the Umbrella Policy. Moreover, RSP was aware of alleged defective workmanship prior to the effective date of the Umbrella Policy.

50.     Any alleged occurrence took place outside of the policy period of the Umbrella Policy so Secura has no duty to defend of indemnify RSP with respect to Underlying Lawsuit.

WHEREFORE, Plaintiff, Secura Insurance Company, respectfully requests that this Court enter an Order finding and declaring that Secura Insurance Company has no duty to defend or indemnify Defendant Residential Service Providers, Inc. d/b/a RSP Heating and Cooling in the

Underlying Lawsuit and that judgment be entered in its favor and against the Defendants, and grant such further or other relief to Secura Insurance Company as this Court deems just and proper.

                                                **SECURA INSURANCE COMPANY**

                                                By: */s/ William K. McVisk*
                                                       One of its Attorneys

William K. McVisk
TRESSLER LLP
233 South Wacker Drive – 61st Floor
Chicago, Illinois 60606-6399
Tel: (312) 627-4000
Fax: (312) 627-1717
WMcVisk@tresserllp.com
Attorneys for Plaintiff Secura Insurance Company